UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS L. AKINS,

    Plaintiff,

v.                                                       Case No. 2:25-cv-180-JLB-NPM

WILLIAM S. PAYNE, et al.,

    Defendants.
_____/

## ORDER OF DISMISSAL WITH LEAVE TO AMEND

Plaintiff Thomas L. Akins, a prisoner of the Florida Department of Corrections (FDOC), initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1.) He generally alleges that he is being housed with a known gang member at Charlotte Correctional Institution (CCI) and that his status as a former gang member puts him at risk. (Id.) Because Plaintiff is a prisoner and seeks leave to proceed *in forma pauperis* (Doc. 11; Doc. 12), the complaint is subject to statutory screening.

After carefully reviewing Plaintiff's complaint and its attachments, the Court concludes that dismissal is warranted. Plaintiff may file an amended complaint if he wishes to proceed.

    **I.**     **Screening Standard**

A prisoner who seeks to proceed *in forma pauperis* in this Court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in

any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b)(1), (2).

The rules governing dismissals for failure to state a claim under the screening statutes are largely the same as those under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). And under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint may not rest on " 'naked assertions[s]' devoid of 'further factual enhancement.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Finally—unlike Rule 12(b)(6)—section 1915 "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

## II.     Complaint

In his 50-page complaint (with attachments), Plaintiff alleges the following relevant facts, which the Court accepts as true at this stage of litigation:   On September 26, 2024, Plaintiff advised Defendant Sergeant Torres that he was an inactive gang member.   (Doc. 1 at 3, ¶ 13.)   He told Defendant Torres that placing him in a cell with an active gang member would be "detrimental" because of his prior gang activity and his label as a homosexual.   (Id.)   On October 10, 2024, he submitted another form to Defendant Torres, "elucidating his fear of being housed with active gang members [inadvertently]."   (Id. ¶ 14.)   On the same day, he submitted an informal grievance on the matter.   (Id. at 4, ¶ 15.)   Defendant Torres addressed the grievance and stated that she would note Plaintiff's status as an inactive gang member.   (Id. ¶ 17, Doc. 1–1 at 2.)   On November 22, 2024, Defendant Tucker denied Plaintiff's formal grievance on the matter.   (Doc. 1 at 4–5, ¶ 19; Doc. 1-2 at 2.)   On December 12, 2024, Plaintiff's administrative appeal was denied by Defendant Milliken.   (Doc. 1 at 5, ¶¶ 20, 22; Doc. 1-3 at 2.)

On November 15, 2024, while Plaintiff's grievance appeal was pending, Plaintiff was placed with an "active known gang member," although Plaintiff did not know the inmate's status until later.   (Doc. 1 at 5, ¶ 21.)   Plaintiff believed he had no available remedy but to accept "the new housing arrangement without being apprised of Inmate [Christopher] Sesler's status or be subjected to penological sanctions under the prison's disciplinary procedure for refusing the housing placement."   (Doc. 1 at 6, ¶ 23 (minor grammar alterations made for clarity).)   Plaintiff asserts that—had he realized Inmate Sesler was a gang member—"he

would have refused and accepted disciplinary instead of jeopardizing his safety." (Id.)  Plaintiff learned of Inmate Sesler's "experience as a gang member" on December 11, 2024 and informed him "without giving specific details that he could not be housed with him and would find a way to be relocated without causing the both of [them] disciplinary action."  (Id. ¶ 24.)

On Defendant 12, 2024, Plaintiff filed a grievance of reprisal against Defendants Torres and Tucker "for intentionally allowing him to be housed with [an] active known gang member after Plaintiff Akins placed them on notice that this could lead to him being subjected to a risk of serious harm."  (Doc. 1 at 6, ¶ 25.) He also filed a grievance of reprisal alleging retaliation against Defendants Torres and Tucker because they "allow[ed] him to be housed with a known active gang member after he placed them on notice of the substantial risk of harm that could result from doing so."  (Id. at 7, ¶ 26.)  On December 20, 2024, Defendant Brock responded to and denied one of the grievances as follows:

> You specifically are grieving your housing placement as you directly hold Sgt. Torres and Mr. Tucker, SCLO accountable for the placement, and jeopardizing your safety in housing you with known gang members.  Be advised that neither Mr. Tucker, nor Sgt. Torres are responsible for your housing placement on this compound. While Sgt. Torres is security, she is not responsible for your housing, as this is regulated by transport staff, none of which you identify in this grievance.  Your housing placement is reviewed and coordinated within parameters of what is permissible and appropriate to maintain your safety, and appropriate housing.  You are Close Management level two (CM2) which your housing not only regulates you to have a cellmate, but also limits the appropriateness of those inmates who are, and are not compatible with you.  In review you were housed

>appropriately by the transport staff. Furthermore, you state within your grievance that you were having a conversation with your at the time cellmate, and you decided and stated that you would "find a way to move out," due to him being stg affiliated. In review, you are also STG affiliated within the database. In your grievance you do not portray any circumstances other [than] the affiliation of another, that your safety was at risk. Within the prison system, inmates do not choose their housing, as it is designated and reviewed for appropriateness by the institution for the functionalism of the facility, and safety of those within.

(Doc. 1-4 at 2; Doc. 1 at 7, ¶ 27.)[1] On the same day, Defendant Padgham responded to Plaintiff's other grievance of reprisal, explaining that it was non-compliant and advising Plaintiff to "contact the shift officer in charge for immediate action" if he feared another inmate. (Doc. 1-5 at 2; Doc. 1 at 7, ¶ 28.)

On January 3, 2025, Plaintiff filed a request for administrative remedy requesting protective management. (Doc. 1 at 8, ¶ 29; Doc. 1-6 at 3.) He alleged that officers at CCI were retaliating against him by plotting to have other inmates harm him because he filed numerous grievances. (Doc. 1-6 at 3.) He alleged that the officers slandered his character by accusing him of being a "snitch, homosexual, and ex-gang member." (Doc. 1–6 at 3; Doc. 1 at 8, ¶ 29.) Defendant J. Adams advised Plaintiff that the grievance was not compliant with FDOC rules and advised Plaintiff that "if you fear staff, you need to file an informal to the Colonel.

---

[1] On January 17, 2025, Defendant Milliken informed Plaintiff that the response he had received at the institutional level was appropriate. (Doc. 1-7 at 2; Doc. 1 at 8–9, ¶ 32.)

The Colonel should have the opportunity to address these issues regarding staff at the institution." (Doc. 1-6 at 2; Doc. 1 at 8, ¶ 31.)

Plaintiff asserts that he was moved several times during the pendency of these grievances, and he was repeatedly housed with Inmate Sesler. (Doc. 1 at 9, ¶¶ 33–35.) He generally asserts claims of deliberate indifference and retaliation against the defendants. (Id. at 10–15.) He seeks injunctive relief and monetary damages. (Id. at 16.)

## III.   Discussion

The Court liberally construes the complaint as seeking to raise claims based upon the defendants' alleged failure to protect him from other inmates who might wish him harm because of his status as a former gang member. "[A] prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1102 (11th Cir. 2014). The objective component requires evidence that the officer "disregard[ed] [a] known risk by failing to respond to it in an (objectively) reasonable manner." Caldwell, 748 F.3d at 1099. The subjective component requires evidence that the defendant officer actually knew of a risk of harm to the plaintiff inmate. Mosley v. Zachery, 966 F.3d 1265, 1270–71 (11th Cir. 2020). This standard is one of "subjective recklessness as used in the criminal law[.]" Farmer v. Brennan, 511 U.S. 825, 839–40 (1994).

Here, Plaintiff appears to assert that Inmate Sesler posed a risk to Plaintiff because both he and Sesler are current or former gang members. Plaintiff does not otherwise explain Inmate Sesler's danger to Plaintiff, and he does not assert that Inmate Sesler threatened or harmed him. Defendant Brock told Plaintiff that the classification team members (who are not named as defendants) are responsible for matching cellmates and that they determine appropriate housing for inmates according to what is permissible and appropriate to maintain safety. And indeed, Plaintiff has not alleged that he has been threatened or harmed in any manner. In short, the facts alleged here do not state a constitutional claim against any defendant based upon Plaintiff's housing with Inmate Sesler.

Likewise, Plaintiff does not state a retaliation claim under the First Amendment. For a prisoner to state a section 1983 First Amendment retaliation claim, he must establish that: (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on the speech. Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008). Here, Plaintiff appears to argue, without sufficient facts to justify a claim, that the defendants uniformly denied his grievances in retaliation for his filing them in the first place. This circular logic would transform every denied grievance filed by a prisoner, regardless of the sufficiency of the facts alleged, into a constitutional violation. But it is well settled that a general allegation that a prison official denied grievances does not "support a finding of constitutional violations on the part

of" the defendant. Raske v. Dugger, 819 F. Supp. 1046, 1054 (M.D. Fla. 1993); Smith v. Tifft, No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct brought to light by the grievance, is insufficient to establish § 1983 liability.").

In short, as pleaded, Plaintiff's complaint does not state a constitutional claim against any of the nine named defendants. Nevertheless, because he proceeds *pro se* and the Court cannot conclude that amendment would be futile, Plaintiff may file an amended complaint. See Jenkins v. Walker, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."). However, Plaintiff should *carefully* review the following before submitting an amended complaint.

### A. Plaintiff cannot proceed against any defendant on a theory of supervisory liability or respondeat superior.

Plaintiff names as defendants FDOC employees who were not personally involved in Plaintiff's housing placement, presumably hoping to hold them liable solely based upon their roles as supervisors. But without an affirmative causal connection to a constitutional violation, these officers' supervisory positions do not subject them to liability. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). The required "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[,]" Brown v. Crawford, 906 F.2d 667,

671 (11th Cir. 1990), or when "the supervisor's improper 'custom or policy result[s] in deliberate indifference to constitutional rights.'" Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). As drafted, none of the facts alleged in Plaintiff's complaint show the requisite causal connection to support a respondeat superior or supervisor liability claim against any defendant.

### B. Plaintiff may not sue FDOC defendants for monetary damages in their official capacities.

Each defendant named in Plaintiff's complaint is an employee of the FDOC. He names these defendants in both their individual and official capacities. A suit against an FDOC employee in his or her official capacity is a suit against the agency itself. Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'"). But under the Eleventh Amendment, states and state agencies cannot be sued for monetary damages in federal court without consent. See Pennhurst State School & Hospital v. Halderman, 465 US. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought," and regardless of whether a plaintiff's claims are brought under federal or

state law.  Id.  The FDOC is a state agency for Eleventh Amendment purposes and has not waived its immunity from suit.  See, e.g., Walden v. Fla. Dep't of Corr., 975 F. Supp. 1330, 1331 (N.D. Fla. 1996) (noting that the FDOC is "a state agency that is clearly the equivalent of the State of Florida for Eleventh Amendment purposes"). Thus, Plaintiff may not seek monetary damages from any defendant in his or her official capacity.

### C. Plaintiff cannot receive all relief sought.

Part of the relief sought is an injunction ordering the defendants to remove Plaintiff "from the cell that housed any gang members that [are] active and known under the security threat group profile [and] to prevent the Department of Corrections from housing [him] with active known gang members in the near future."  (Doc. 1 at 16, ¶ 50.)  In other words, Plaintiff wants this Court—rather than the appropriate prison officials at CCI—to oversee his housing arrangements. However, this Court will not interfere with the day-to-day decisions of prison officials making housing assignments for inmates; appropriate housing is the type of decision typically made by prison administrators with the expertise to make these decisions, considering the safety and security of the prison staff and inmates. See Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Although the Court recognizes Plaintiff's concerns, the proper remedy is for Plaintiff to file an administrative

remedy with the appropriate prison officials expressing his security concerns.

Plaintiff also seeks compensatory damages from each Defendant. (Doc. 1 at 16, ¶ 51.) However, Plaintiff does not assert that he was physically injured by his placement with Inmate Sesler. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy section 1997e(e), a prisoner must assert physical injury that is more than de minimis. Because he does not assert that any defendant's actions led to a physical injury, Plaintiff is barred under section 1997e(e) from receiving compensatory damages for his emotional damages.

### D. A defendant's denial of Plaintiff's grievances does not state a constitutional claim.

Plaintiff attaches numerous grievances to his complaint form. To the extent Plaintiff seeks to hold any defendant liable merely because he or she denied those grievances, he does not state a claim for two reasons. First, Plaintiff has no stand-alone constitutional right to a grievance procedure. See Thomas v. Warner, 237 F. App'x 435, 437 (11th Cir. 2007) ("We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."). And second, a defendant's denial of a grievance, standing alone, does not establish personal participation or causation. See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights

- 11 -

alleged by plaintiff, does not establish personal participation under § 1983.") (cited with approval in Coleman v. Bowden, 797 F. App'x 422, 427 (11th Cir. 2019)); Thomas v. Poveda, 518 F. App'x 614, 618 (11th Cir. 2013) (affirming dismissal of a plaintiff's claims that were based solely on the defendants' denial of his grievance appeal because the complaint did "not suggest that [the defendants] had knowledge of a risk of serious harm or disregarded that risk when they denied his appeal"). Thus, Plaintiff must do more than complain that a defendant denied his grievance before attributing liability to that defendant.

### E. Plaintiff must properly exhaust all claims before filing his complaint.

Plaintiff attached numerous grievance forms to his complaint. Notably, it appears that at least two of his grievances were denied as non-compliant with Florida rules for grievance appeals. (See Doc. 1-5 at 2; Doc. 1-6 at 2.) The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. See Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

To properly exhaust his administrative remedies, an inmate must "us[e] all

steps" in the administrative process and comply with all "deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Thus, if an inmate has filed "an untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. Id. at 83–84. And if a prisoner did not properly exhaust his available administrative remedies before filing suit, the Court *must* dismiss the action. See Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004). Thus, Plaintiff must remove any unexhausted claims from an amended complaint if he wishes to proceed.

## IV.     Conclusion

As explained, Plaintiff's complaint does not state a constitutional claim. Therefore, he must file an amended complaint to proceed with this action. An amended complaint supersedes the filing of the initial complaint and becomes the operative pleading in a case. Krinsk v. Suntrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011).

Plaintiff should carefully read this Order before submitting an amended complaint because any amended complaint will, once again, be subject to statutory screening.[2]

Accordingly, it is **ORDERED**:

---

[2] If Plaintiff does not wish to proceed or concludes that he cannot file an amended complaint that will withstand a second screening, he should move to voluntarily dismiss this action under Rule 41(a) of the Federal Rules of Civil Procedure to avoid a "strike" under 28 U.S.C. § 1915(g).

1. Plaintiff's complaint is **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

2. Plaintiff must file an amended complaint within **TWENTY-ONE (21) DAYS** from the date on this Order if he wishes to proceed in this action. If Plaintiff does not comply in a timely manner, the Court will close this case without further notice.

3. Plaintiff must file any amended complaint on the Court's pre-approved complaint form. The **Clerk** is directed to mail Plaintiff a 42 U.S.C. § 1983 prisoner civil rights complaint form marked "amended" and containing this case number.

**DONE and ORDERED** in Fort Myers, Florida on May 23, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

Encl: 42 U.S.C. § 1983 civil rights complaint form (prisoner)